IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA (Ft. Lauderdale)

| | |
|---|---|
| **EMMITT C. WRIGHT,** | No. |
| **Plaintiff,** | **CIVIL ACTION – LAW** <br> **JURY TRIAL DEMANDED** |
| v. | District Judge: <br> Magistrate Judge: |
| **JASON ZEHLER,** <br> **SIMONE L. PAYNE,** <br> **DAVID GUERRIER,** <br> **TYRONE G. FOSTER,** <br> **MICHAEL MORALES,** <br> **ADRIAN ULLOA, and** <br> **GREGORY TONY,** | |
| **Defendants.** | |

# COMPLAINT

**AND NOW** comes the Plaintiff, EMMITT C. WRIGHT, by and through his undersigned counsel, DEVON M. JACOB, ESQUIRE, of the law firm of JACOB LITIGATION, INC.; and BENJAMIN L. CRUMP, ESQUIRE, of BEN CRUMP LAW, PLLC, to aver the following:

## JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983.

2. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1343, and 1367.

1

3. Venue is proper in this Court, as all parties are located within the Southern District of Florida, and the cause of action arose in the Southern District of Florida.

## PARTIES

4. Plaintiff, EMMITT C. WRIGHT ("WRIGHT"), is an adult individual, who lives in the Southern District of Florida.

5. Defendant, JASON ZEHLER ("ZEHLER"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff, with the rank of Sergeant. All of Defendant ZEHLER'S actions or inactions were taken under color of state law. He is sued in his individual capacity.

6. Defendant, SIMONE L. PAYNE ("PAYNE"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff, with the rank of Sergeant. All of Defendant PAYNE'S actions or inactions were taken under color of state law. She is sued in her individual capacity.

7. Defendant, DAVID GUERRIER ("GUERRIER"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff. All of Defendant GUERRIER'S actions or inactions were taken under color of state law. He is sued in his individual capacity.

8.  Defendant, TYRONE G. FOSTER ("FOSTER"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff. All of Defendant FOSTER'S actions or inactions were taken under color of state law. He is sued in his individual capacity.

9.  Defendant, MICHAEL MORALES ("MORALES"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff. All of Defendant MORALES' actions or inactions were taken under color of state law. He is sued in his individual capacity.

10. Defendant, ADRIAN ULLOA ("ULLOA"), is an adult individual, who during all relevant times, was employed by the Broward County Sheriff's Office, as a Deputy Sheriff. All of Defendant ULLOA'S actions or inactions were taken under color of state law. He is sued in his individual capacity.

11. Defendant, GREGORY TONY ("TONY"), is an adult individual who is the duly elected Sheriff of the Broward County Sheriff's Office ("BSO"). TONY is sued in his official capacity.

## MATERIAL FACTS

12. During all relevant times, the Individual Defendants[1] were employed as sheriff deputies by the Broward County Sheriff's Office, which is located at 2601 West Broward Boulevard, Fort Lauderdale, FL 33312.

---

[1] Unless otherwise stated, "Individual Defendants" refers to Zehler, Payne, Guerrier, Foster, Morales, and Ulloa.

13. On or about July 12, 2019, the Individual Defendants were dispatched to a residence, located in Unincorporated, Broward County, Florida, to assist with a Baker Act involving WRIGHT.

14. At the time, WRIGHT was suffering from a mental health emergency, having been previously diagnosed with a mental illness.

15. When the Individual Defendants arrived, one Defendant was calm and professional, and attempted to obtain WRIGHT's trust and deescalate the situation.

16. The Co-defendants, however, undermined the first Defendant's efforts.

17. The Co-defendants were aggressive, rude, and appeared intent on using physical force against WRIGHT.

18. No one had requested that WRIGHT be arrested for committing a crime.

19. WRIGHT was not the subject of an arrest warrant.

20. WRIGHT did not attempt to hit, kick, or otherwise strike the Individual Defendants.

21. Concerned for his personal safety, WRIGHT began to walk away from the Individual Defendants.

22. ZEHLER signaled to the co-defendants to take WRIGHT into physical custody.

23. GUERRIER wrapped his arms around WRIGHT from the rear and slammed WRIGHT to the ground; using a non-sanctioned take-down that did not comport with standard law enforcement training.

24. GUERRIER then punched WRIGHT in the thigh several times.

25. PAYNE used a conducted electrical weapon ("CEW") (Taser SN# X2900936M, Cartridges C6204VRCN & C6204VRCT) against WRIGHT.

26. PAYNE fired the Taser twice into WRIGHT'S lower body, observing the first set of probes entered WRIGHT'S left thigh.

27. PAYNE is not sure where the second set of probes landed.

28. PAYNE activated the Taser seven times, which included one drive-stun to WRIGHT'S right forearm.

29. ZEHLER used an expandable baton to intentionally strike WRIGHT in his lower legs and ribs.

30. ZEHLER admits that he struck WRIGHT 5 to 6 times in his calves and shins, and 4 to 5 times in his ribs, all of which did not comport with standard law enforcement training.

31. MORALES, FOSTER, and ULLOA, assisted the co-defendants by holding WRIGHT down while the co-defendants used the aforementioned force against WRIGHT.

32. ULLOA then applied handcuffs to WRIGHT.

33. ZEHLER observed that as a result of the baton strikes, WRIGHT was bleeding from his right shin.

34. When family protested the use of force, one of the Individual Defendants stated, "If you had a better way to handle it, you let me know."

35. Subsequently, Deputy Sheriff, Major Steve Robson, appeared on Channel 7 News, and on behalf of the BSO, defended the Individual Defendants' conduct.

36. When WRIGHT'S mother attempted to file a citizen's complaint with the BSO, a deputy sheriff asked her why she called the BSO for assistance instead of just taking WRIGHT to the hospital herself.

37. When a deputy sheriff learned that she had video of the incident, the deputy sheriff demanded that she produce her phone for inspection, which she refused to do.

38. The BSO implemented policy 10.18 (Mentally Ill and Intoxicated Persons).

39. Section 10.18.6(A) of the policy provides, "A CIT deputy assigned to the district in which an incident occurs will be dispatched, if available. If a CIT deputy is unavailable, then the nearest available patrol deputy will be dispatched."

40. Section 10.18.6(B) of the policy provides in relevant part, "If a non-CIT deputy is dispatched to the scene, then the road patrol supervisor will attempt to locate the closest available CIT deputy via Communications."

41. Pursuant to FED.R.CIV.P. 11(b)(3), the following factual contentions will likely have evidentiary support after a reasonable opportunity for further investigation or discovery: No CIT deputy was ever requested or dispatched.

42. Section 10.18.6(D) of the policy provides in relevant part, "The mentally ill person will be handled in the least confrontational manner possible."

43. The BSO implemented policy 6.1 (Use of Force) and policy 6.4 (Weapons Other Than Firearms /Less Lethal Weapons).

44. Section 6.1.4 (Subject Resistance Levels) and section 6.1.5 (Deputy Response Options) provides no direction regarding what option is permitted for each resistance level.

45. Neither policy 6.1 nor policy 6.4 provides direction regarding when/how the use of an expandable baton is permitted by policy.

46. Section 6.4.4(C)(3)(a) provides in relevant part, "Use the shortest duration of CEW exposure objectively reasonable to accomplish the lawful objectives, and reassess the subject's behavior, reaction, and resistance before initiating or continuing the exposure. If the CEW use is ineffective in incapacitating

a subject or achieving compliance, consider alternative control measures in conjunction with or separate from the CEW."

47. Section 6.4.4(C)(3)(b) provides, "Avoid simultaneous CEW exposures."

48. The use of force incident was investigated by internal affairs.

49. Notably, the internal affairs report did not discuss what department policy or training required or permitted under the totality of the circumstances.

50. The Individual Defendants were cleared of any wrongdoing.

51. As a direct result of the force used by the Individual Defendants, or permitted by the Individual Defendants to be used, WRIGHT sustained serious and disabling injuries.

52. WRIGHT's injuries included a broken leg that required surgery to insert a permanent rod.

## COUNT I

**Plaintiff WRIGHT v. ZEHLER, PAYNE,
GUERRIER, FOSTER, MORALES, and ULLOA
Fourth Amendment (Excessive Force)
Pursuant to 42 U.S.C. § 1983**

53. Paragraphs 1 through 52 are incorporated herein by reference.

54. The Fourth Amendment protects citizens from unreasonable searches and seizures, which "encompasses the right to be free from excessive force during the course of a criminal apprehension." Oliver v. Fiorino, 586 F.3d 898, 905 (11th

Cir. 2009).

55. Courts analyze claims that officers have violated that right using the Fourth Amendment's "objective-reasonableness standard." Patel v. City of Madison, Ala., 959 F.3d 1330, 1338 (11th Cir. 2020).

56. That standard requires courts to consider whether the officers' conduct was "objectively reasonable in light of the facts confronting" them. Id. (quotation omitted).

57. Whether an officer used a reasonable amount of force depends on "(1) the severity of the crime; (2) whether the individual posed an immediate threat to the safety of the officers or others; and (3) whether the individual actively resisted arrest or attempted to evade arrest by flight." Patel, 959 F.3d at 1339 (alteration and quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

58. The Eleventh Circuit has also considered "(4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." Id.

59. The force used against WRIGHT was not objectively reasonable.

60. As a direct and proximate result of the Defendants' conduct, WRIGHT suffered and will continue to pain, physical and mental injury, mental anguish, fear, embarrassment, and humiliation, some or all of which may be permanent.

61.	As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

## COUNT II

### Plaintiff WRIGHT v. ZEHLER and PAYNE
### Fourth Amendment (Supervisor Liability)
### Pursuant to 42 U.S.C. § 1983

62.	Paragraphs 1 through 52 are incorporated herein by reference.

63.	"Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).

64.	ZEHLER and PAYNE were supervisors.

65.	ZEHLER and PAYNE personally participated in causing WRIGHT'S constitutional injuries.

66.	As a direct and proximate result of the Defendants' conduct, WRIGHT suffered and will continue to pain, physical and mental injury, mental anguish, fear, embarrassment, and humiliation, some or all of which may be permanent.

67.	As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

## COUNT III

### Plaintiff WRIGHT v. ZEHLER, PAYNE, GUERRIER, FOSTER, MORALES, and ULLOA
### Fourth Amendment (Duty to Intervene)
### Pursuant to 42 U.S.C. § 1983

68. Paragraphs 1 through 52 are incorporated herein by reference.

69. To establish a failure to intervene claim, a Plaintiff must establish that a Defendant officer was in a position to intervene to stop another officer's unlawful conduct and had an appreciable opportunity to do so. See Riley v. Newton, 94 F.3d 632, 635 (11th Cir. 1996).

70. The Defendants each had an appreciable opportunity and duty to intervene to stop each other's unlawful conduct but failed to do so.

71. As a direct and proximate result of the Defendants' conduct, WRIGHT suffered and will continue to pain, physical and mental injury, mental anguish, fear, embarrassment, and humiliation, some or all of which may be permanent.

72. As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

## COUNT IV

### Plaintiff WRIGHT v. Defendant TONY/BSO
### Americans with Disabilities Act

73. Paragraphs 1 through 52 are incorporated herein by reference.

11

74. Title II of the Americans with Disabilities Act ("ADA") applies to state and local government entities, and, in subtitle A, protects qualified individuals with disabilities from discrimination on the basis of disability in services, programs, and activities provided by state and local government entities.

75. Title II extends the prohibition on discrimination established by section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794, to all activities of state and local governments regardless of whether these entities receive Federal financial assistance.

76. The TONY/BSO knew through the Individual Defendants that WRIGHT suffered from a qualifying disability.

77. The TONY/BSO assumed a duty of care over WRIGHT.

78. The TONY/BSO failed to provide proper policy or training to their agents and employees who they assigned the duty of providing care, custody, and control, over disabled persons like WRIGHT.

79. The TONY/BSO through its employees failed to accommodate WRIGHT's disability.

80. As a direct and proximate result of the Defendants' conduct, WRIGHT suffered and will continue to pain, physical and mental injury, mental anguish, fear, embarrassment, and humiliation, some or all of which may be permanent.

81. As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

## COUNT V

### Plaintiff WRIGHT v. Defendant TONY/BSO
### Fourth and Fourteenth Amendments—Municipal Liability
### Pursuant to 42 U.S.C. § 1983

82. Paragraphs 1 through 52 are incorporated herein by reference.

83. "Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

84. In addition, a failure to train may give rise to municipal liability if the failure to train amounts to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Canton v. Harris, 489 U.S. 378, 388 (1989).

85. TONY/BSO knowingly failed to maintain policies, practices, and training that met the minimum standards in the industry.

86. As discussed herein, TONY/BSO maintained policies, practices, and customs, which were the moving force that resulted in Plaintiff's constitutional rights being violated.

87. In the alternative, as discussed herein, TONY/BSO failed to implement or enforce proper policies and training, as discussed herein, which was the moving force that resulted in Plaintiff's constitutional rights being violated.

88. As a direct and proximate result of the Defendants' conduct, WRIGHT suffered and will continue to pain, physical and mental injury, mental anguish, fear, embarrassment, and humiliation, some or all of which may be permanent.

89. As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in his favor as follows:

A. **Declaratory Judgment:** Providing that the Defendants' individual and collective conduct violated Plaintiff's Federal Constitutional rights;

B. **Compensatory Damages:** Including, but not limited to, the monetary value associated with the following: violations of legal rights, emotional distress, emotional injury, fear, pain and suffering, physical injury, continuing injury, and permanent injury;

    C.    **Punitive damages** as permitted by law;

    D.    **Equitable Relief:** A written admission of the allegations stated in the Complaint, an in-person oral apology, and a written admission and apology on the BSO'S official letterhead;

    E.    **Attorney's Fees and Costs**; and

    F.    **Discretionary Damages and Relief:** Such other financial or equitable relief that the Court deems reasonable and just.

## Jury Trial Demand

Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

**Respectfully Submitted,**

s/ *Devon M. Jacob*                                        **Date: July 9, 2021**
**DEVON M. JACOB, ESQUIRE**
PA Bar Number: 89182
**JACOB LITIGATION, INC.**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com
(Plaintiffs' Counsel) (Pro Hac Vice to be filed)


s/ *Benjamin L. Crump*                                   **Date: July 9, 2021**
**BENJAMIN L. CRUMP, ESQUIRE**
FL Bar Number: 72583
**BEN CRUMP LAW, PLLC**
122 S. Calhoun Street, Tallahassee, Florida 32301
(850) 224-2023 | court@bencrump.com
(Plaintiffs' Counsel)